NEWTON, The ISAAC. See Cases Nos. 7,089–7,092.

---

## Case No. 10,194.

### The NEW YORK.

### [1 Ben. 211.] [1]

District Court, E. D. New York. June, 1867.

COLLISION IN EAST RIVER—EVIDENCE.

1. Where a bark in tow of a steamtug was injured by a collision with a ferry boat, on a clear day, the vessels having seen each other at abundant distance to have avoided each other, and the testimony was in conflict; but the man at the wheel of the bark was not called, nor his absence accounted for, while the man in charge of the tug testified that the ferry boat did not stop, though under full headway, till she was within ten feet of the bark, and then did not reverse her engine. *Held*, that such a collision must have been the result of carelessness.

2. The statement of the man from the tug must be incorrect; such a blow would have produced far other injuries, and the statement is a case of gross exaggeration.

3. Such a tendency to misdescribe, causes mistrust in the libellant's case; and a decree will not be rendered in his favor on such testimony.

This was an action by Lewis Foster, owner of the bark Free Trade, to recover for injuries sustained by the bark in a collision with the ferry boat New York, on the 28th of October, 1865.

The accident happened in the harbor of New York, off the South Ferry slip, on the New York side, on the morning of a clear day. The tide was young flood, the wind light, and the vessels in no way embarrassed by other vessels.

The witnesses on both sides agreed that the ferry boat was heading for her slip, and that the bark, having a steamtug upon her starboard quarter, was being towed out of the East river on a westerly course, across the mouth of the slip, and at right angles with the direction of the ferry boat.

The evidence also showed that the bark was struck upon her larboard side, amidships.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

As to the other elements of the case, the evidence was in direct conflict. The witnesses for the ferry boat declared that the ferry boat had stopped before the approach of the bark, and lay in the river waiting for another ferry boat to vacate the slip; that the bark came down inside the ferry boat and where there was plenty of room for her to pass in safety, and that instead of keeping her course, when near the ferry boat the bark sheered off toward her, upon seeing which the ferry boat instantly backed, but the sheer of the bark was so sudden that she came upon the ferry boat before the latter had time to back out of her way. The witnesses for the bark denied the sheer or any other change of course, and said that the ferry boat was on a course at right angles to the course of the bark, and that she kept her course and speed until the moment of a collision, when she brought up square upon the starboard side of the bark.

A. J. Heath, for libellant.
B. D. Silliman, for claimants.

BENEDICT, District Judge. It is manifest that this collision, happening as it did on a clear day, between two vessels which saw each other at abundant distance to avoid accident, was the result of carelessness, but where the negligence was is not clear. I notice this, however, that the man at the wheel of the bark, who from his position and duty would be best able to say whether the course of the bark was or was not changed, as charged by the claimant, is not called as a witness, nor is any attempt made to account for his absence, while the person in charge of the tug, and who was, as he said, responsible for the movements of the bark, is positive in the assertion that he saw the ferry boat all the time; that she was under full headway, and did not check her speed till within about ten feet of the bark's side, when she first stopped her engine but did not reverse.

This statement, flatly contradicted by the men on the ferry boat, must be wholly incorrect. A ferry boat like the New York approaching the bark head on, and keeping full speed till within a few feet, would have produced results far different from the injuries caused here. This is a case not of miscalculation of distances or wrong estimate of time, but as it seems to me of gross exaggeration on the part of a most important and intelligent witness in charge of the injured vessel, and from whom the court was entitled to receive a frank and accurate account of what took place.

The exhibition of such a tendency to misdescribe the occurrence, makes me distrustful of the libellant's case, and unwilling to render a decree upon such testimony.

I shall therefore dismiss the libel and leave the libellant to prove his case, if he can, before the appellate court, by calling his wheelsman and some of the many passengers who saw the accident, and who may be able to give reliable information as to what was the action of the two vessels on the occasion in question.